UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IN RE **SUBPOENA DUCES TECUM**
**DIRECTED TO NON-PARTY**
**HIGHGROUND HOLDINGS, LLC**

| | |
|---|---|
| **HIGHGROUND HOLDINGS, LLC** | **MISC. ACTION** |
| **VERSUS** | **NO. 22-148-BAJ-RLB** |
| **MMR CONSTRUCTORS, INC.** | |
| | **RELATED CASE:** |
| **MMR CONSTRUCTORS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-267-BAJ-RLB** |
| **JB GROUP OF LA, LLC, ET AL.** | |

## ORDER

Before the Court is the Non-Party Highground Holdings, LLC's ("Highground") Motion to Quash Plaintiff's Subpoena *Duces Tecum*. (R. Doc. 1). The motion is opposed. (R. Doc. 11). Highground filed a Reply. (R. Doc. 18).

**I.      Background**

Highground is seeking an order quashing a Rule 45 subpoena served by MMR Constructors, Inc. ("MMR"), the plaintiff in a civil action already pending before this Court. In the underlying action, MMR filed a Complaint seeking damages and injunctive relief against JB Group of LA, LLC *d/b/a* Infrastructure Solutions Group ("ISG") and former MMR employee David Heroman ("Heroman"). *See MMR Constructors, Inc. v. JB Group of LA, LLC, et al.*, No. 22-267-BAJ-RLB, EFC No. 1. The district judge granted MMR's Motion for Temporary Restraining Order, which sought immediate injunctive relief prohibiting the defendants from

accessing, using, disclosing, or disseminating MMR's trade secrets and confidential business information, and set a preliminary injunction hearing. *Id.*, ECF No. 7.

After the parties identified the electronic devices at issue, the district judge entered Stipulated a Preliminary Injunction and required the parties to submit an agreed-upon forensic protocol. *Id.*, ECF No. 23. The Forensic Protocol was entered into the record on May 31, 2022 and subsequently amended. *Id.*, ECF Nos. 26, 45.

MMR has since named as defendants three additional former MMR employees who departed for ISG: Kasey Kraft, Jason Yates, and Michael Lowe. *Id.*, ECF Nos. 29, 53. Among other things, MMR alleges that these individual defendants "accessed, downloaded, uploaded, emailed and/or transmitted MMR's trade secrets and confidential business information and transferred such information to ISG with the specific and malicious intent to exploit and misappropriate MMR's customer base, business strategies, and pricing to unlawfully compete against MMR for the benefit of ISG, its direct competitor," and that ISG profited from this unlawful misappropriation and deceptive trade practices. *Id.*, ECF No. 53 at 25-27.

Discovery is set to close in the underlying action on July 7, 2023. *Id.*, ECF No. 35. The Court has entered a Protective Order governing the exchange of confidential information in the underlying action, including confidential information sought by subpoenas. *Id.*, ECF No. 42.

On August 9, 2022, Highground filed the instant Motion to Quash in the U.S. District Court for the Eastern District of Louisiana given that the subpoena sought compliance in New Orleans, Louisiana. (R. Doc. 1). The Motion to Quash was transferred to this district and this miscellaneous action was opened. (R. Docs. 6, 7). The Court provided MMR with additional time to respond to the Motion to Quash and stayed any duties to respond to the underlying subpoena. (R. Doc. 10).

Highground identifies itself as "a limited liability company located in Dallas, Texas, that indirectly holds a majority interest in ISG." (R. Doc. 1-1 at 4). The subpoena seeks the production of five categories of documents:

> 1. The Communications, during [July 1, 2021, through the present], exchanged between [Highground] and ISG and/or its members or investors — including Shawn Breeland, Jason Yates, Kenny Rouse, and Jeremy Starnes — regarding any potential investment, acquisition, asset management, or other business dealing between HighGround and ISG.
>
> 2. The business plans exchanged with HighGround by ISG during [July 1, 2021, through the present].
>
> 3. Business forecasts and/or projections with HighGround by ISG during [July 1, 2021, through the present]
>
> 4. HighGround's investment thesis and/or statement concerning ISG.
>
> 5. The Communications exchanged among HighGround's investment and/or executive team(s)/personnel concerning any potential transaction, investment, acquisition, or other business dealing with ISG.

(R. Doc. 1-3 at 8).

Highground first argues that the Court should quash the subpoena because it impermissibly seeks compliance more than 100 miles from Highground's office in Dallas, Texas. (R. Doc. 1-1 at 7-8; *see* R. Doc. 1-2). Highground then argues that the Court should quash the subpoena because it is facially overly broad and otherwise imposes an undue burden on Highground. (R. Doc. 1-1 at 8-12).

**II.    Law and Analysis**

    **A.    Legal Standards**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

3

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 45 governs the issuance of subpoenas. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena." Fed. R. Civ. P. 45(d)(1). On timely motion, the court for the district where compliance is required must quash or modify a subpoena that fails to allow a reasonable time to comply or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). Subpoenas issued for discovery purposes are subject to the discovery limitations outlined in Rule

26(b). *See Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003); 9A Wright & Miller, Federal Practice & Procedure 2d § 2459 ("Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the last sentence of Rule 26(b)(1)."). Furthermore, a subpoena may be quashed or modified if the subpoena "requires a person to comply beyond the geographical limits specified in Rule 45(c)" Fed. R. Civ. P. 45(d)(3)(A)(ii); *see* Fed. R. Civ. P. 45(c)(2)(A) ("A subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

  **B.**  **Analysis**

    **1.**  **The Subpoena Violates the 100-Mile Rule**

There is no dispute that Highground was served the subpoena at issue at its only office, which is located in Dallas, Texas. (*See* R. Doc. 1-1 at 7; *see* R. Doc. 1-2). Nevertheless, the subpoena sought compliance in New Orleans, Louisiana, which is nearly 500 miles away from Dallas. For this reason alone, the subpoena is subject to being quashed or modified. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii) (providing that subpoena must be quashed or modified where it "requires a person to comply beyond the geographical limits specified in Rule 45(c)); *see* Fed. R. Civ. P. 45(c)(2)(A) ("A subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regulatory transacts business in person."); *see also Sandifer v. Hoyt Archery, Inc.*, No. 12-322, 2014 WL 3540812, at *4 (M.D. La. July 17, 2014) ("A subpoena requiring a nonparty to produce documents at a place more than 100 miles away is invalid.") *Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*, No. 20-2795, 2021 WL 7708048, at *9 (E.D. La. May 21,

2021) (quashing subpoena for production of documents where subpoena "required production at a location more than 100 miles from the non-party's location.").

MMR relies on out-of-Circuit decisions in support of its assertion that "Courts have interpreted Rule 45 to allow production by mail or email anywhere." (R. Doc. 11 at 5). One of the decisions relied upon by MMR specifically noted that Rule 45 does not allow an exception for e-mail productions outside of agreement by the parties:

> Rule 45 contemplates the voluntary production of documents via email outside of the "100-mile rule" where the parties agree to such a compromise. *See* Fed. R. Civ. P. 45(c)(2), Advisory Committee Notes, 2013 Amendment. "Under the current rule, parties often agree that production, particularly of electronically stored information, be transmitted by electronic means . . . and nothing in these amendments limits the ability of parties to make such arrangements." *Id.* But while Rule 45 leaves room for voluntary compromise around the 100-mile rule, it lacks any explicit exception to the rule with respect to email. Given the ubiquity of email in modern communication, to create an exception under which documents that can be produced via email are not subject to the rule's geographical limitations would entirely swallow the "100-mile rule" set forth within Rule 45.

*Dou v. Carillon Tower/Chicago LP*, No. 18-7865, 2020 WL 5502345, at *2 (N.D. Ill. Sept. 11, 2020). In *Dou*, the Court granted a motion to modify the subpoena to allow the serving party to retrieve responsive documents from the non-party's office in New York City. *Id*.

Here, MMR argues that it "requested that Highground send the responsive documents via email to MMR's counsel, and is not requesting anyone travel more than 100 miles to hand deliver the documents or escort the documents to its counsel's office in Louisiana." (R. Doc. 11 at 5). To be clear, while the subpoena lists MMR's counsel's e-mail address, the only "place" identified is MMR's counsel's office in New Orleans, Louisiana. (*See* R. Doc. 1-3 at 3). And even if the subpoena did indicate that compliance by email was sufficient, the actual "place" of compliance violates the 100-mile rule, subjecting the subpoena to being quashed or modified. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii); 45(c)(2)(A).

Furthermore, the 100-mile rule does not only concern the delivery of documents. It also controls the location where a motion to quash is to be filed and resolved, namely "the court for the district where compliance is required," unless the motion is transferred to the issuing court. Fed. R. Civ. P. 45(d)(3)(A)-(B), 45(f). Highground did not agree to send the documents sought by e-mail. To file a motion to quash, it had to seek relief nearly 500 miles from its office by filing a Motion to Quash in the Eastern District of Louisiana, which was the court for the district where compliance was required by the subpoena.

Given the foregoing, the Court finds it appropriate to quash the subpoena in its entirety under Rule 45(d)(3)(ii) on the basis that it violates the 100-mile rule. MMR or its attorneys failed to take "reasonable steps to avoid imposing undue burden or expenses" by seeking compliance with a subpoena nearly 500 miles away from Highground's office. *See* Fed. R. Civ. P. 45(d)(1).

### 2. The Subpoena Subjects Highground to Undue Burden

Contrary to Highground's arguments, the Court does not find the subpoena, in its entirety, to be facially overly broad. The Court does, however, concludes that the subpoena presents an undue burden.

"To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citations omitted).

7

First, there can be no serious dispute that communications and transmission of documents evidencing that the defendants in the underlying action, including ISG or its members, provided allegedly misappropriated information to Highground would fall within the scope of discovery.

But MMR has not set forth any documentation indicating that any such communications or transmissions of information were made. At most, MMR has informed the Court that the defendant Jason Yates testified at his deposition that ISG provided Highground with certain materials such as "business forecasts, financial information, projections, business plans, and other data that **could** bear on whether ISG's explanation into E&I work is predicated on its possession and continued use of MMR's trade secret information." (R. Doc. 11 at 7-8) (emphasis added). But the deposition testimony relied on does not state that any allegedly misappropriated information from MMR was provided by ISG to Highground or otherwise relied upon with respect to the business information sought. (*See* R. Doc. 11).

At this time, MMR is merely speculating at this point in the litigation regarding the relevance of information held by Highground. Whether these is merit to MMR's theory that the information provided by any defendant to Highground was "predicated on its possession and continued use of MMR's trade secret information" is best determined, in the first instance, through party discovery.[1]

MMR appears to argue that it has an absolute "right to seek [and obtain] documents from any third party in that third party's possession, custody, or control" that falls within the scope of

---

[1] The extent of party discovery conducted in the underlying action is unclear. On June 23, 2022, MMR represented the following in a joint status report: "There is a forensic protocol in place regarding the forensic examinations. Further, [MMR] has taken a limited deposition of Jason Yates, and received responses to its expedited interrogatories and requests for production." See *MMR* No. 22-267-BAJ-RLB, EFC No. 31 at 10. ISG has filed a Motion to Stay Discovery and the Forensic Protocol and for Specific Identification of MMR's Alleged Trade Secrets. *Id*., ECF No. 46. MMR has filed a Motion for Contempt and to Compel for alleged violations of the Preliminary Injunction and the Forensic Order. *Id*., ECF No. 51. These filings do not identify the extent of written party discovery conducted in the underlying action.

discovery. (R. Doc. 11 at 8). But MMR does not explain why it cannot seek and obtain any communications and transmission of documents to which the defendants are involved directly from these defendants. This would serve to not only identify those instances but also focus any necessary inquiries to non-parties. For example, any "communications" between ISG and Highground, including the exchange of business plans, business forecasts, and/or projections between those entities, would also be in ISG's possession, custody, or control. And contrary to MMR's arguments, the Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or **can be obtained from some other source that is more convenient, less burdensome, or less expensive.**" Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added); *see also Wiwa*, 392 F.3d at 818 (in determining undue burden, court may consider the expense and inconvenience to the non-party subject to a subpoena)

Third, while the Court does not find the entire subpoena to be facially overly broad, certain aspects of it are indeed overly broad. Of particular concern to the Court are MMR's overly broad requests for "HighGround's investment thesis and/or statement concerning ISG" as well as Highground's internal investment and business plans, given that MMR and ISG are competitors.

Fourth, while the Court finds reasonable MMR's limitation to the time period from July 1, 2021 to the Present, MMR did not provide such a limitation with respect to all topics at issue.

Fifth, for certain topics, the subpoena does not describe with sufficient particularity the documents sought. For example, the vague requests for documents concerning "potential" transaction, investment, acquisitions, and "other" business dealings highlight that MMR has not conducted sufficient party discovery prior to serving the instant subpoena.

Finally, while Highground does not present specific evidence indicating the costs for compliance with the subpoena, it is again the responsibility of MMR to first obtain documents from a less burdensome source, namely the actual defendants in this action. After discovering what information and documents were actually exchanged by the defendants and Highground,[2] MMR will be in a better position to determine whether Highground's internal documents fall within the scope of discovery (which scope specifically includes proportionality).

In sum, the Court will also quash the subpoena because it subjects Highground to undue burden. MMR should demonstrate its efforts to obtain and identify such discovery from the parties in this litigation. To the extent third party discovery from Highground is warranted, it should be crafted in consideration of the analysis set forth above.[3]

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Non-Party Highground Holdings, LLC's Motion to Quash Plaintiff's Subpoena *Duces Tecum* (R. Doc. 1) is **GRANTED**, and the subpoena (R. Doc. 1-3 at 3-8) is **QUASHED**. The Clerk's Office shall close this miscellaneous action.

Signed in Baton Rouge, Louisiana, on September 29, 2022.

　　　　　　　　　　　　　　　　　　　　　
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] If ISG claims that no such communications or documents were ever exchanged, some limited discovery could be warranted to test that assertion.

[3] Should any future motion practice involving Highground be directed to any other court of compliance, the parties shall provide a copy of this Order to such court so that it may consider whether exceptional circumstances warrant a transfer pursuant to Rule 45(f) even without agreement of the parties.